**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FREDERIC M. GAWRY, et al.,** | ) | **Case No. 1:07 CV 322** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Judge Dan Aaron Polster** |
| **vs.** | ) | |
| | ) | |
| **COUNTRYWIDE HOME LOANS, INC.,** | ) | <u>**MEMORANDUM OF OPINION AND**</u> |
| **et al.,** | ) | <u>**ORDER**</u> |
| | ) | |
| **Defendants.** | ) | |

Before the Court are Plaintiffs Frederick and Lorraine Gawry and Ingrid Carr's

Motion for Class Certification and Appointment of Class Counsel (***ECF No. 74***) and Defendants

Countrywide Home Loans, Inc. and Countrywide Home Loans Servicing EP's Motions to Strike

Class Allegations as to Putative Class I(b) (***ECF No. 75***) and for Summary Judgment as to All

Claims Asserted by Plaintiff Ingrid Carr (***ECF No. 76***).  For the following reasons, Plaintiffs'

Motion for Class Certification is **DENIED**, Defendants' Motion to Strike Class Allegations as to

Putative Class I(B) is **GRANTED**, and Defendants' Motion for Summary Judgment as to All

Claims Asserted by Plaintiff Ingrid Carr is **GRANTED**.  Because these decisions leave no viable

causes of action, this case is hereby **DISMISSED WITH PREJUDICE**.

**I.  FACTS**

In December, 2003, Plaintiffs Frederick and Lorraine Gawry ("the Gawrys")

executed an adjustable rate note in the amount of $310,250.00 and a mortgage securing that note.

*ECF No. 70* at ¶ 13.  Shortly thereafter, Countrywide Home Loans, Inc. (collectively with

Countrywide Home Loans Servicing LP, "Countrywide" or "Defendants") acquired the Gawrys'

note and mortgage which contained a prepayment/refinancing penalty.  *ECF No. 70* at ¶ 15; *ECF No. 74* at 2.  In June, 2005, the Gawrys paid off their note in full prior to its expiration date in order to refinance.  *ECF No. 70* at ¶ 17.  To obtain a paid note and release of the mortgage lien, the Gawrys were required to pay Countrywide an $8.910.53 penalty, amounting to 2.87% of the original principal loan amount.  *Id.* at ¶ 18-20.

Similarly, in August, 2004, Plaintiff Ingrid Carr ("Carr" or collectively with the Gawrys, "Plaintiffs") executed an adjustable rate note in the original principal amount of $92,800.00 and a mortgage securing that note, expressly made pursuant to R.C. § 1343.  *ECF No. 70* at ¶ 22, 24.  Shortly thereafter, Countrywide acquired Carr's Note and Mortgage.  *Id.* at ¶ 25.  Carr's Note contained a prepayment rider imposing a 5% prepayment penalty of the original principal loan amount if Carr fully paid off the loan within three years of the date of the note. *Id.* at ¶ 27.  Three years passed, during which time Carr did not fully pay off the loan and thus did not incur any prepayment charge.  *ECF No. 76* at 1.

On February 6, 2007, Plaintiffs filed this class action complaint against Defendants Countrywide Home Loans, Inc. and Countrywide Home Loans Servicing LP (collectively, "Countrywide").  *ECF No. 1.*  Plaintiffs, individually and on behalf of those similarly situated, bring several claims alleging that Countrywide violated Ohio Revised Code ("R.C.") § 1343 prohibiting residential mortgage prepayment or refinancing penalties in excess of 1% of the original principal loan amount.

The Gawrys sue on behalf of Ohio residents who paid a prepayment or refinancing penalty in excess of the limits imposed by R.C. § 1343.011(C) during the six years prior to this action ("Class I").  *ECF No. 70* at ¶ 28.  Class I asserts four causes of action

including: usury; unfair and deceptive trade practices that violate Ohio Consumer Sales Practices Act; unjust enrichment; and violation of Ohio public policy.  *Id.* at ¶¶ 41, 51-52, 57, 61.   For relief, the Gawrys request: damages in the amount the penalties exceed 1% of the original principal loan amount; a declaration that Countrywide violated R.C. § 1343.011(C) and that the prepayment provisions are therefore void and unenforceable; and appropriate injunctive and equitable relief including an award of litigation costs and attorney fees. *Id.* at pp. 10, 12.

Carr seeks to represent those Ohio residents whose note contains a similar prepayment rider, but have not yet paid a prepayment penalty ("Class II").  Class II joins Class I in all claims except unjust enrichment.  Class II requests: entry of a Court order that they may rescind or reform their loan documents to eliminate the allegedly usurious prepayment penalty provisions; a declaration that the respective notes violate R.C. § 1343.011(C); damages sustained because of the increased cost of credit created by the inclusion of the prepayment penalty provision in their notes;[1] and appropriate injunctive and equitable relief including an award of attorney fees and litigation expenses.  *Id.* at pp. 9, 10, 12, 15.

On April 9, 2007 Countrywide filed a motion to dismiss for lack of subject matter jurisdiction arguing that the Gawrys' claims should be dismissed because: (1) Countrywide's prior offer to refund the Gawrys' penalty in the amount it exceeded Ohio's 1% limit mooted the Gawrys' claim; (2) the Gawrys failed to notify Countrywide of their claim and therefore denied Countrywide the contractually obligated opportunity to cure the alleged injury; and (3) Carr lacks standing to sue because she did not pay the prepayment penalty and thus suffered no

---

[1]     Plaintiffs have subsequently dropped this claim for monetary damages. *See ECF No. 91* at 33 (stating that no monetary relief is sought by Class II members and that "the only relief requested is for declaratory, injunctive, and equitable relief in the context of the remedy of reformation.").

concrete injury.  *ECF No. 7*.  The Court denied the motion to dismiss on June 13, 2007.  *ECF No. 13*.  Subsequently, the Court engaged the parties in frequent telephone conferences to facilitate settlement.  On December 19, 2007, after the parties notified the Court of their inability to settle any claims, Countrywide filed a motion for summary judgment against Ingrid Carr arguing, again, that Carr lacked standing and that her state law claims are preempted by federal law.  *ECF No. 21*.  On August 25, 2008 the Court denied Countrywide's motion for summary judgment concluding that unresolved questions of material fact precluded summary judgment.  *ECF No. 49*.

With the Court's assistance, the parties settled the claims of certain Class I members by dividing the class into two subclasses: (a) those individuals against whom Countrywide did not possess a preemption defense ("Class I(a)"); and (b) those individuals against whom Countrywide intends to present a preemption defense ("Class I(b)").  The settlement required Countrywide to refund the prepayment penalty each Putative Class I(a) member paid in excess of 1% of their original principal loan amount.  To effectuate the settlement, on September 22, 2008, Plaintiffs amended the Second Complaint to add a Fifth Claim for Relief alleging a cause of action specifically on Putative Class I(a)'s behalf and moved for class certification of Putative Class I(a).  *ECF No. 50*.  Pursuant to a February 3, 2009 fairness hearing, the Court approved the settlement by certifying Class I(a) and entering final judgment on Class I(a)'s claims, dismissing their claims with prejudice.  *ECF No. 67*.

Pursuant to the Court's October 20, 2008 Scheduling Order, the parties subsequently engaged in discovery regarding class certification.  *ECF No. 58*.  On March 23, 2009, the parties filed the three motions now before the Court.  Plaintiffs filed a Motion for Class

-4-

Certification ("Motion for Class Certification") of Classes I(b) and II under Federal Rules of Civil Procedure 23(b)(2) and/or 23(b)(3).  *ECF No. 74*.  Countrywide filed a Motion to Strike Class Allegations as to Putative Class I(b) ("Motion to Strike") alleging that because there is no viable representative for Putative Class I(b), class allegations in the complaint should be removed. *ECF No. 75*.  Additionally, Countrywide filed a Motion for Summary Judgment as to All Claims Asserted by Plaintiff Ingrid Carr ("Motion for Summary Judgment") arguing that she cannot recover her requested relief because she lacks evidence proving she suffered any cognizable harm.  *ECF No. 76.*  Responses and replies have all been filed.

## II.  STANDING

As an initial matter, Countrywide argues the Court should deny class certification because the Gawrys and Carr lack standing.  *ECF No. 82*-1 at 29.  Countrywide claims the Gawrys lack standing because they voluntarily settled their individual claims against Countrywide prior to class certification.  As a result, the Court dismissed their individual claims with prejudice and therefore the Gawrys no longer have a live controversy with Countrywide. *Id.* Furthermore, Countrywide maintains that Carr's claim is moot because her prepayment rider expired before she paid any prepayment charge.  Therefore, she did not suffer a legally cognizable injury.  *Id.*  Countrywide concludes by alleging that because the named plaintiffs lack standing, they are inadequate representatives under Rule 23(a)(4).  *Id.*

Plaintiffs argue that Countrywide cannot attempt to "pick off" its named representatives in order to defeat class certification.  *ECF No. 81* at 16.  Plaintffs' contend the Gawrys may continue to represent the remaining members of Class I despite settlement of their individual claims because delays caused by unsuccessful settlement negotiations and

-5-

Countrywide's filing of motions ultimately denied warrant application of the "relation back" doctrine (i.e. that the Court should judge the Gawrys' standing at the time the complaint was filed to preserve the merits of Putative Class I(b)'s claims).  *Id.* at 17-18 (citing *Sosna v. Iowa*, 419 U.S. 393, 402, n. 11 (1975).  Similarly, Plaintiffs argue that Carr's claim is not moot because at the time the complaint was filed, she had a live controversy and that she therefore is an adequate class representative.  *ECF No. 34* at 29.

While the Gawrys' claims are moot because they have been settled and dismissed with prejudice (*ECF No. 67*), even if their case had not settled, they cannot represent putative Class I(b) because they are not and have never been members of this class.  The Supreme Court stated in *Sosna v. Iowa*, 419 U.S. 393, 413 (1975), that "[a] litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court."  While both Class I subclasses paid the allegedly usurious penalty, their membership is different because Countrywide asserts a preemption defense to Putative Class I(b), but not to Putative Class I(a).  Class I(a) settled their claims four months before resolution of the class certification issue.  *ECF No. 67.*  Therefore, as members of settlement Class I(a), the Gawrys are no longer parties to the instant litigation, nor  are they members of Putative Class I(b).  Therefore, they may not represent that class's interests.

Carr also may not represent Putative Class I(b) because she did not pay Countrywide a prepayment penalty, a prerequisite to membership in that class.  Additionally, Carr's claim is now moot and consequently she cannot represent Putative Class II.  To maintain a class action, "a named plaintiff [must have] a [live] case or controversy at the time the complaint is filed and at the time the class action is certified."  *Sosna*, 419 U.S. at 402; *Crosby v.*

*Bowater Inc.*, 382 F.3d 587, 597 (6th Cir. 2004).  Carr executed her Note and Mortgage in August 2004 with a three year term for her prepayment rider. *ECF No. 70* at ¶ 22.  The rider expired in August 2007.  While Carr had a live controversy at the time the complaint was filed, and presumably for the three years subsequent, she no longer does.  Therefore, because the putative class has not yet been certified, Carr may not serve as the named representative for Putative Class II.[2]

Because Plaintiffs' named representatives for putative Classes I(b) and II do not have standing to represent the class, the Court could deny class certification solely on these grounds.  However, in their oppositions to Countrywide's Motion to Strike and Motions for Judgment, Plaintiffs ask the Court to grant leave to allow for intervention of other putative Class I(b) and II members to act as class representatives should the Gawrys and Carr be found to lack standing.  *ECF No. 80* at 12; *ECF No. 81* at 18.  Plaintiffs' request for intervention is denied because, as discussed *infra*, regardless of who represents the classes, class certification is not appropriate under Federal Rules of Civil Procedure 23(b)(2) and/or 23(b)(3).

## III.  RULE 23(b)(3) CERTIFICATION

Under Federal Rule of Civil Procedure 23(b)(3), a class action may be maintained if, along with meeting the prerequisites of Rule 23(a),[3] "the court finds that the questions of law

---

[2]  Where "the controversy involving the named Plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion" *Sosna* contemplated that certification could relate back to the time of filing based "upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review."  *Sosna*, 419 U.S. 402 at n.11.  Such a situation is not relevant here because, as discussed *infra*, class certification is not warranted for reasons beyond lack of standing.

[3]  The parties do not dispute that the requirements of Rule 23(a) have been satisfied.

or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

The matters relevant to that inquiry include: (A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action. *Id.*

### A.  PREDOMINANCE

The predominance inquiry tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 564 (6th Cir. 2007).  To satisfy the predominance requirement, a plaintiff must establish that the issues in the suit that are subject to generalized proof predominate over the issues subject only to individualized proof. *Id.*  A claim will satisfy the predominance requirement for class certification where common evidence exists that proves or disproves an element on a simultaneous, class-wide basis, thus obviating examination of each class member's individualized position. *In re Foundry Resins Antitrust Litigation*, 242 F.R.D. 393, 409 (S.D. Ohio 2007). *See also Beattie*, 511 F.3d at 566 (finding the predominance requirement satisfied where common evidence could establish defendant's liability on a class-wide basis).

In their Opposition to Plaintiff's Motion for Class Certification, Countrywide argues that Plaintiffs have not met Rule 23(b)(3)'s predominance requirement because

-8-

individualized evidence is required to: (1) determine to which putative class members R.C.

§1343.011(C) actually applies; (2) resolve Countrywide's defenses; and (3) calculate damages.

*ECF No. 82-1* at 16-28.  Analyzing and balancing each of these arguments individually,

certification under Rule 23(b)(3) is inappropriate because the predominance requirement is not

satisfied.

### *1.  R.C. §1343.011(C)*

R.C. §1343.011(C), pursuant to which Plaintiffs' claims are brought, prohibits

prepayment charges in excess of 1% for residential mortgages.  A residential mortgage is defined

as a loan secured by real property "containing two or fewer residential units or on which two or

fewer residential units are to be constructed..."  R.C. §1343.011(A)(2).

Countrywide argues that individualized evidence is required to determine whether

a putative class member's mortgage qualifies for protection under R.C. § 1343.011(A)(2).  *ECF

No. 82-1* at 16.  Countrywide admits that while it can easily identify the instances where a

prepayment penalty in excess of 1% was charged, it does not have the information pertaining to

whether those instances are covered by R.C. § 1343.011(C) "in [an] easily accessible

computerized format."  *Id*. at n.8.  Plaintiffs argue Countrywide has the information needed to

assess whether a class member's loan is protected under R.C. § 1343.011(C) and that because the

class is limited to "residential mortgages," all class members, by definition, may bring claims

under that statute.  *ECF No. 91* at 11.

Countrywide's argument, couched in terms of predominance, is directed more

towards class definition and determining an individual's membership in that class.  One

important purpose of a class definition is to "facilitat[e] a court's ability to ascertain its

membership in some objective manner." *Crawly v. Ahmed*, Civ. No. 08- 14040, 2009 WL 1384147, at * 9 (E.D.Mich. May 14, 2009).  *See Thrope v. State*, 173 F.R.D. 483, 487 (S.D.Ohio. 1997) (stating "[t]he Court is mindful that the best way to ascertain class membership is to define the class in objective terms, without consideration of the merits of the claim.")  Where extensive factual inquiries are required to determine whether an individual is a member of a class, certification is improper.  *Snow v. Atofina Chemicals, Inc.*, Civ. No.01- 72648, 2006 WL 1008002, at * 8-9 (E.D.Mich. March 31, 2003).  For example, in *Napier v. Laurel County*, Civ. No. 05- 1132, 2008 WL 544468, at * 6 (E.D.Ky. Feb. 26, 2008), class certification was denied partly because subjective mini-trials were required to determine if the proposed class members were actually in the class.

Here, however, Class I(b) and II are defined, in pertinent part, as "those who have incurred and/or paid... and those whom are... subject to, or will become subject to... residential mortgage prepayment or refinancing penalties." *ECF No. 91* at 11 (emphasis omitted).  This class definition provides an objective method for determining whether an individual is a member of the proposed class – whether they were subject to, or will be subject to, an illegal residential mortgage prepayment penalty.  Such a determination, even if not available in easily accessible computerized format, will not involve an "extensive factual inquiry" that will degenerate into a series of subjective mini-trials.  Accordingly, defining membership in this putative class is not an appropriate basis for finding a lack of predominance and Defendants' argument is rejected.

### 2.  Countrywide's Defenses

Countrywide intends to assert at trial several defenses including: (1) Plainitiffs' claims are preempted by federal banking laws; (2) Plaintiffs' claims are preempted by the

-10-

Alternative Mortgage Transactions Parity Act ("AMPTA"); (3) some putative class members lack standing because they initiated bankruptcy proceedings; and (4) under the Volunatary Payment Doctrine ("VPD") those putative class members who voluntarily paid the prepayment penalty cannot recover damages.  *ECF No. 82-1* at 16-25.  Countrywide claims the defenses defeat predominance because they require individualized fact-finding to resolve.  *Id.* at 17-8.

        "Because a defendant's evidence may be probative of class cohesiveness and may be such as to cause the class to degenerate into a series of individual trials...a court performing a predominance inquiry under Rule 23(b)(3) may consider not only the evidence of plaintiff's case-in-chief but the defendant's likely rebuttal evidence."  *Rodney v. Northwest Airlines, Inc.*, 146 Fed. App'x 783, 786-7 (6th Cir. 2005) (internal quotations omitted).  The fact a defense may arise against and affect class members differently does not *require* a finding that individual issues predominate.  *Beattie*, 511 F.3d at 563 (emphasis added).  However, the Advisory Committee Notes to Rule 23(b)(3) advise against certification when the defendant has a defense to liability that varies with individual class members.  *Rodney*, 146 Fed. Appx. at 786; see also *Butler v. Sterling, Inc*., Civ No. 98- 3223, 2000 WL 353502 at * 7 (6th Cir. March 31, 2000) (affirming denial of class certification based on whether "the defendants could realistically be expected to argue the applicability of its statute of limitations defense to numerous class members individually at one trial" and whether the jury could "assimilate such overwhelming information.");  *Garrish v. United Automobile, Aerospace, and Agricultural Implement Workers of America*, 149 F.Supp.2d. 326, 333 (E.D. Mich. 2001) (relying on *Butler* in denying certification based on statute of limitations defense "that is particular to each individual Plaintiff...");  *In Re American Med. Sys. Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) (denying

-11-

certification and noting that "the alleged tortfeasor's affirmative defenses (such as the failure to follow directions, assumption of the risk, contributory negligence, and the statute of limitations) may depend on facts peculiar to each plaintiff's case.").

### *a. Banking Preemption*

Countrywide asserts that it plans to raise as a defense that the Home Owners' Loan Act ("HOLA"), 12 U.S.C. §1461 *et seq*., and the National Bank Act ("NBA"), 12 U.S.C. §1 *et seq*., preempt the claims of all members of putative Class I(B) and many members of putative Class II.  A critical issue in this case is whether Countrywide is even eligible to assert these banking preemption defenses.  For example, while HOLA covers federal savings associations, Countrywide admits that it is not a federal savings association.  *ECF No. 49* at 3. Nevertheless, Countrywide argues that it is entitled to preemption under HOLA when it acquires a mortgage originated by a federal savings association.  *ECF No. 82-1*18.  Thus, Countrywide claims resolution of its banking preemption defense hinges on transaction specific evidence, including: which entity originated the loan; whether that entity was entitled to claim preemption; the nature of the original assignment; whether all interests in the loan were assigned to Countrywide; and how the parties interpreted the language of the loan documents.  *Id.* at 19-20.

Plaintiffs contend Countrywide's federal banking preemption "is a legal defense that must be resolved by the Court" and should be uniformly adjudicated class-wide.  *ECF No. 91* at 12.  Specifically, Plaintiffs argue that the individual factual inquires cited by Countrywide are unnecessary because the Court need only determine the legal issue of whether "preemption travels" from a federal savings association to a non-federal savings association in connection with the sale of a residential mortgage.  *Id.* at 14.

-12-

The flaw in Plaintiffs' argument is that the individual inquiries are unnecessary only if the Court determines the legal issue of preemption in Plaintiffs' favor. If the legal issue of preemption is resolved in favor of Defendants, the Court will necessarily have to delve into the specific details of each individual transaction to determine whether Countrywide is entitled to a preemption defense for that specific loan. The Court will have to look at each transaction to determine who originated the loan and whether they were entitled to the preemption defense, whether all of the interests of the loan were transferred to Countrywide, and whether any language in the contract effectively overrode the preemption defense. Thus, the Court would essentially have to conduct a very fact-driven individualized inquiry into each putative class member's mortgage transaction to determine the issue of preemption. This obviously runs contrary to the class action purpose of utilizing common evidence to efficiently adjudicate disputes.

That is not to say that the Court will determine the legal issue of banking preemption in favor of Defendants. After briefing was completed, the Supreme Court held, in a June 29, 2009 decision, that the NBA does not prohibit ordinary enforcement of state law. *Cuomo v. The Clearing House Assoc.*, 557 U.S. __ (2009). Thus, Countrywide's NBA preemption defense will likely be unsuccessful as a matter of law. However, based on a plain reading, the *Cuomo* holding does not appear to extend to HOLA.

Nevertheless, a motion for class certification is not the appropriate forum for resolving on the merits such a critical legal issue as HOLA preemption. *See Rodney v. Northwest Airlines, Inc.*, 146 Fed. App'x 783, 786 (6th Cir. 2005) (in Rule 23(b)(3) predominance analysis, courts examine substance and structure of underlying claims "without

-13-

passing judgment on their merits") (citation omitted).   Because the Court cannot determine whether the preemption legal issue will be resolved in favor of Plaintiffs and because resolution in favor of Defendants will necessitate the use of individualized evidence to determine whether preemption applies to each putative class member, Plaintiff has not established that class issues predominate over individual issues.  Therefore the banking preemption defense weighs against class certification.

### b. AMTPA Preemption

Countrywide asserts that the AMTPA  preempts class members' claims when the loan originators that were entitled to assert AMTPA preemption assigned their defenses to Countrywide.  *ECF No. 82-1* at 21.  This is very similar to Countrywide's argument regarding banking preemption.  Accordingly, Countrywide argues that resolution of this defense requires individualized assessments regarding the status of the loan originator (*see supra*) plus a determination whether the originator is a qualifying "housing creditor" under 12 U.S.C. §804(a). *Id.*

Plaintiff argues that Countrywide's AMTPA defense should be resolved with class-wide evidence, stating:

> "[t]he determinative issue under Countrywide's AMTPA defense is not whether Countrywide comes under the auspices of AMTPA regulation, but whether the Ohio legislature opted out of the Depository Income and Deregulation Act ("DIDA"), the AMTPA's enabling legislation. And if not, whether the AMTPA, prior to July, 2003, when the Office of Thrift Supervision ("OTS") saw fit to change its position on prepayment penalties, preempted Ohio's reasonable limitation (not prohibition) set forth in R.C. §1343.011(C)."

*ECF No. 91* at 14 n.2.

-14-

Essentially, both parties argue the same thing under AMTPA preemption as they did under banking preemption.  For example, Plaintiffs state that "whether Countrywide can legally purchase a housing creditor's right of preemption afforded it under the AMTPA are, like Countrywide's theory asserting preemption under the NBA and HOLA issues of law to be resolved by the Court."  *ECF No. 91* at 17.  Countrywide argues that "[t]o determine whether [it] could maintain an AMTPA Preemption defense, the trier of fact would also have to engage in the same inquiries required with respect to Countrywide's Banking Preemption defense..." *ECF No. 82-1* at 22.  Therefore, as was the case with banking preemption, class issues do not predominate because the possible resolution of the AMPTA preemption legal issue in favor of Defendants would necessitate specific factual inquiries into the applicability of the defense.

### c. Lack of Standing Due to Bankruptcy Proceedings

Next, Countrywide argues that some putative class members lack standing because they initiated bankruptcy proceedings.  *Id.* at 23.  This defense, Countrywide alleges, cannot be litigated class-wide because it involves analysis of three individual issues: "(1) whether the borrower filed a bankruptcy proceeding after being assessed a prepayment charge; (2) whether the borrower's cause of action against Countrywide became part of the bankruptcy estate; and (3) whether the trustee later made some filing, or the bankruptcy court some order, allowing the borrower to pursue the cause of action against Countrywide."  *Id.*

Plaintiffs mischaracterize Defendants' argument as requiring denial of class certification under Rule 23 "if the possibility exists that any putative class members may be in bankruptcy proceedings ..." *ECF No. 91* at 17.  Countrywide only asserts that they possess a standing defense to some potential class members who filed bankruptcy proceedings after

-15-

obtaining their loans and that the "defense cannot be litigated on a class-wide basis." *ECF No. 82-1* at 23.

Plaintiffs nonetheless continue to argue that predominance is not defeated simply because some putative class members may have filed bankruptcy proceedings and that absent class members "need not make an individual showing of standing for the purposes of Rule 23 certification. *ECF No. 91* at 18.[4]  Plaintiffs are correct that the standing of the individual class members need not be determined at a Rule 23 class certification inquiry. *See In re Northwest Airlines Corp.*, 208 F.R.D. 174, 224 (E.D.Mich 2002) (stating "it is not necessary, at the class certification stage, for Plaintiffs to show that each and every class member could satisfy an individualized standing inquiry.").  However, at the certification stage, the Court must look beyond the pleadings and anticipate how the case would play out at trial.  *See Rodney*, 146 Fed. App'x. at 785 (stating "a court is allowed to look beyond the pleadings on a class certification motion to determine what type of evidence will be presented by the parties").  As to those putative class members who may be involved in bankruptcy proceedings, the Court is going to

---

[4]  As support, Plaintiffs cite *Wilborn v. Dunn & Bradsteet Corp.*, 180 F.R.D. 347 (N.D.Ill. 1998), where the defendant argued that because some class members may have filed bankruptcy and failed to properly exempt their claims, they would lack standing to sue. The *Wilborn* defendant asserted that individual issues thus predominated because the court would have to make individualized inquiries into each class member's standing. The court rejected the defendant's argument finding that "[i]f damages are awarded, the bankruptcy status of each class member will have to be determined" and that "[t]his determination regarding damages ... need not require a highly fact-intensive inquiry." Though the facts of the instant case are similar, the Court chooses not to follow *Wilborn*, a case from outside the Sixth Circuit, because the *Wilborn* court sought to address the defendant's standing argument only if damages were awarded. Because standing is a threshold question in every federal case, *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 961 (6th Cir. 2009), the issue of whether certain class members have standing to bring a claim because of bankruptcy proceedings should be resolved long before the damages stage.  Moreover, though the bankruptcy inquiry need not necessarily be "highly fact-intensive" it cannot be resolved through the use of common evidence.

-16-

have to make individualized inquiries to determine whether they have standing.  While this determination may not necessarily be complex, it cannot be resolved without examining the specific details of the bankruptcy proceedings for each putative class member who filed for bankruptcy.  Accordingly, resolution of this issue does not favor a finding of predominance.

### *d. Voluntary Payment Doctrine*

Countrywide alleges that various members of putative Class I(b) are barred from making a claim because they voluntarily paid the usurious prepayment charge.  *ECF No. 82-1* at 24.  Under the voluntary payment doctrine or defense ("VPD"), which is recognized in Ohio, *Scott v. Fairbanks Capital Corp.*, 284 F.Supp.2d 880, 894 (S.D.Ohio 2003), "[i]n the absence of fraud, duress, compulsion or mistake of fact, money voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay."  *State ex rel. Dickman v. Defenbacher*, 395 N.E.2d 5 (Ohio 1949).  That is, "a person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution."  *Scott*, 284 F.Supp.2d at 894 (quoting *Randazzo v. Harris Bank Palatine*, 262 F.3d 663, 667 (7th Cir. 2001)).  Thus, Countrywide argues that class members may only recover their payment if it was paid under duress, as a result of fraud, or due to mistake of fact, which cannot be proven with common evidence.

Plaintiffs' first argument that the defense is inapplicable to the claims at issue for public policy reasons must be rejected.  Under similar circumstances where a plaintiff alleged violation of R.C. § 1343.01, the Ohio Sixth District Court of Appeals upheld the voluntary payment defense where the usurious payment was voluntarily made based upon a mistake of law. *Luebke v. Moser*, 598 N.E. 2d 760, 762 (Ohio Ct. App. 1991).  Moreover, Plaintiff's citation to

-17-

*Continental Casualty Co. v. Fifth/Third Bank*, 418 F.Supp. 2d 964 (N.D. Ohio 2006), which dealt with an insurance subrogation claim, is not relevant to the instant matter.[5]

Even if the Court were to ignore the *Luebke* ruling immediately discussed *supra*, Plaintiffs' claim that the VPD does not apply to mistakes of law must also be rejected.  Citing the Restatement (Third) of Restitution & Unjust Enrichment at Comment e, Plaintiffs challenge Countrywide's assertion that a mistake of law is not an exception to the voluntary payment defense.  *ECF No. 91* at 21.  Plaintiffs criticize Countrywide's use of *State ex rel. Dickman v. Defenbacher*, 395 N.E.2d 5 (Ohio 1949), a sixty-year-old case as the basis for their VPD defense arguing that Countrywide's position is inconsistent with the modern trend in law.  However, the Restatement is not Ohio law and while *Defenbacher* was decided in 1949, its characterization of the VPD has been reaffirmed in recent cases.  *See Arlington Video Productions, Inc.*, Civ No. 2:08-CV-122, 2008 WL 1990355 at * 6; *Scott v. Fairbanks Capital Corp.*, 284 F.Supp.2d 880, 894 (S.D.Ohio 2003).  Thus, Defendants can raise the VPD at trial.  In order to counter the defense, Plaintiffs will have to demonstrate that the voluntary payment resulted from duress or fraud.  Such a showing will required individualized evidence as the circumstances surrounding

---

[5]     In *Continental Casualty*, pursuant to an insurance policy, the plaintiff insurer made a claim payment to an employer who was defrauded when an employee deposited a check into his personal account instead of the company's account.  *Id*. at 968.  As part of the insurance policy, the employer then assigned to the plaintiff its legal rights against the employee and the defendant bank who deposited the fraudulently obtained check.  *Id*. The bank alleged that because the insurance company had voluntarily paid the money to the employer without legal challenge, even though it was not contractually obligated to do so, it was foreclosed from seeking relief from the bank.  *Id*. at 970.  Noting that public policy weighed against permitting a VPD defense where subrogation claims arise by contract or agreement, the Court denied the bank's VPD defense because it would force insurers to always resist prompt payments of claims in order to preserve their subrogation rights.  *Id*. at 971.

-18-

payment for each putative I(b) class member will certainly differ.

Next, Plaintiffs argue that, were the VPD applicable, it would not preclude class certification because courts assume that consumer class members do not knowingly or voluntarily pay more than required, making individualized inquiries unnecessary.  *ECF No. 91* at 20-21.  That is, the Court can infer that a class member would not voluntarily pay a prepayment penalty in excess of 1% when state law dictates a maximum prepayment penalty of 1%.  The problem with Plaintiffs' argument is that where a plaintiff derives a benefit from contracting to pay more than required, the Court cannot make that assumption.  The Gawrys contracted for a higher prepayment penalty in exchange for a lower interest rate on their loan.  *See ECF No. 83*, Ex. D ("Prepayment Option Disclosure" form signed by Plaintiff Loraine Gawry explaining a 1% interest rate reduction from 7.5% to 6.5% and a $208.32 monthly payment reduction for the "reduced rate option" with a prepayment penalty as compared to the standard adjustable rate mortgage).  It is likely that other class members were provided similar options.  Thus, individual inquiries would be required to explore whether the benefits received by putative class members rendered payment of the prepayment penalty voluntary.

Finally, Plaintiffs argue that, even if the Court accepts Countrywide's characterization of the VPD, all the penalties were paid under duress as a matter of law and should be resolved with common evidence.  *ECF No. 91* at 22.  Plaintiffs state the payments were "most likely" made in connection with the sale or refinancing of a residentially mortgaged property.  *Id.*  Therefore, putative class members had to pay the usurious prepayment penalty or be unable to sell or refinance their property.  *Id.*  This situation, Plaintiffs argue, constitutes duress as a matter of law.  *Id.*

Plaintiffs argument again fails to recognize that some putative class members may have accepted a usurious prepayment penalty in exchange for a more favorable loan term, such as a lower interest rate.  Thus, while the usurious penalty may have acted as an impediment to sale or refinancing, the benefit received in exchange for the prepayment penalty may have ultimately placed certain putative class members in better positions than had they not been subject to the prepayment penalty.  While that does not render the prepayment penalty legal, it does not rise to the level of duress.  Accordingly, it cannot be said that the usurious prepayment penalty constitutes duress as a matter of law.  Therefore the individual circumstances of each transaction will have to be examined, weighing against a finding of predominance.

### 3.  Damage Calculation[6]

Countrywide argues that individual issues predominate in computing damages. Countrywide claims that the damage calculation will be complex because, under Ohio law, the trier of fact must determine for each class member the benefits received from the prepayment penalty, such as lower interest rates.  *ECF No. 82-1* at 25.  Thus, Plaintiffs' damages are the prepayment penalty paid in excess of 1% of the original loan minus the benefits received.  *Id.* Countrywide contends that the "benefits received" variable is transaction specific because pricing decisions are unique to each loan originated.[7]  *Id.*

Plaintiffs argue that damages can be easily calculated as simply the prepayment

---

[6]  This section applies only to putative Class I(b) members because they have already paid the prepayment penalty and have thus suffered monetary damages. Putative Class II, who have not yet paid the prepayment penalty, seeks only reformation.

[7]  As evidence for this position, Countrywide points out that the Gawry's rate reduction was four times larger than Carr's reduction.

penalty paid in excess of 1% of the original loan.  *ECF No. 91* at 25.  Plaintiffs criticize

Countrywide's use of the benefits rule arguing that Countrywide has offered no evidence

proving that putative class members received lower interest rates.  *Id.* at 24.  Plaintiffs claim

Countrywide has the required figures to calculate damages in their computer system or document

image database.  *ECF No. 74* at 19.  Finally, Plaintiffs state that disparate damage awards among

class members does not defeat predominance.  *ECF No. 91* at 23.

> Courts within the Sixth Circuit have held that if common issues predominate,

class certification should not be denied simply because individual class members are entitled to

differing damages.  *Violette v. P.A. Days, Inc.*, 214 F.R.D. 207, 215 (S.D. Ohio 2003); *Beattie v.*

*CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007); *Bentley v. Honeywell International, Inc.*,

223 F.R.D. 471, 487 (S.D. Ohio 2004) (stating "[damages] which can be handled separately after

a trial" will not defeat predominance).  Plaintiffs seeking certification need not calculate a

specific damage figure for each class member but rather must present a "damages model" that

functions on a class-wide basis. *Rodney*, 146 Fed. Appx. at 791.  However, class certification is

not warranted where the proposal "to calculate individual damages is clearly inadequate" or

requires significant inquiry to determine necessary variables.  *Id.*

> Ohio applies the benefits rule which states, in pertinent part, that "the value of the

benefit conferred is considered in mitigation of damages to the extent that [it] is equitable.  *Cline*

*v. American Aggregates Corp.*, 582 N.E.2d 1, 4 (Ohio Ct. App. 1989) (quoting 4 Restatement of

the Law 2d, Torts (1979) 509, Section 920).  Here, it is equitable to apply the benefits rule

because the class members, if successful, should only recover the harm they actually incurred.  If

class members received some benefit from being subject to a usurious prepayment penalty that

-21-

they eventually paid, the benefit should not be ignored.  Thus, any appropriate damage calculation must consider the benefits received by class members.  Moreover, contrary to Plaintiff's assertion, Defendant has presented evidence demonstrating that putative class members may have received a lower interest rate in exchange for a higher prepayment penalty provision.  *See e.g. ECF No. 83*, Ex. B at 131-32 (deposition of Michael Nadeau stating borrowers "get a lower interest rate in exchange for them having a prepayment penalty"); *Id*. at Ex. D ("Prepayment Option Disclosure" form signed by Plaintiff Loraine Gawry explaining a 1% interest rate reduction from 7.5% to 6.5% and a $208.32 monthly payment reduction for the "reduced rate option" with a prepayment penalty as compared to the standard adjustable rate mortgage); *Id*. at Ex. E ("Loan Pricing Estimate" form, purportedly for Plaintiff Ingrid Carr, indicating 0.25% decrease in interest rate with prepayment penalty provision).  Thus, because the benefits rule should be applied and Countrywide has presented evidence of possible benefits received, the appropriate damages calculation should consider the benefits received by class members by being subject to the prepayment penalty.  Countrywide's formula therefore appears to be the most appropriate calculation of damages.

Because Countrywide's formula is appropriate, the trier of fact must determine the benefits each class member received from their excessive prepayment penalty.  Thus, the nature of the damage calculation would be individualized.  For example, in determining the "benefits received" variable, the trier of fact would have to determine both the interest rate with the incurred prepayment penalty and what the interest would have been had a lower prepayment penalty been charged.  While the incurred rate is easily determined, the hypothetical rate had there been a higher prepayment penalty been charged is not.  Therefore, the damages calculation

would require the trier of fact to plug in different variables based on distinct factors of each individual (i.e. credit score, relationship with the loan originator, etc.).  The individualized nature of determining the variables to the formula weigh against a finding of predominance.  *Rodney v. Northwest Airlines, Inc.*, 146 Fed. App'x 783, 791 (6th Cir. 2005).[8]  Thus, because the issues of Countrywide's defenses and damage calculation are not subject to generalized proof, the class is not "sufficiently cohesive to warrant adjudication by representation," *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997), and therefore fails to meet the predominance requirement.

### B.  SUPERIORITY

Having determined that the predominance requirement has not been met, it is unnecessary to examine whether the class action is the superior method for adjudicating the controversy.  Nevertheless, considering the extent of the individual issues and evidence, the claims of numerous class members would break down into mini-trials.  The class action would thus not be the superior means of resolving this case.

## III.  RULE 23(b)(2) CERTIFICATION

Plaintiffs alternatively have moved to be certified as a Rule 23(b)(2) class.  Rule 23(b)(2) permits class certification if the four requirements of Rule 23(a) are satisfied and "the

---

[8]     In *Rodney*, Plaintiffs sought damages against an airline for attempting to "illegally dominate and control" the air travel market at three different airports.  *Id*. at 784. Plaintiffs moved for class certification on behalf of the airline's frequent flyer passengers who bought tickets into or out of the airports in question.  *Id*.  The proposed damages formula compared prices charged by the airline for 74 different routes with a calculated "base fare" of competitors' pricing for routes of similar mileage.  *Id*. at 791.  Certification was denied because "[t]he different variables that would be plugged into the formula are specific to the individual routes" and damage calculation would also "involve analysis of the distinct characteristics of various [of the defendant airline's] routes" which "certainly does not favor class certification."  *Id*.

party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or corresponding declaratory relief is appropriate respecting the class as a whole..." Fed.R.Civ.P. 23(b)(2).

Rule 23(b)(2) class actions are referred to as a "mandatory" class action because class members may not opt out of the class and do not have an automatic right to notice. *Romberio v. Unumprovident Corp.*, Civ. No. 07-6404, 2009 WL 87510, slip. op. at * 9 (6th Cir. Jan. 12, 2009). The defining characteristic of 23(b)(2) classes is the "homogeneity of the interests of the members of the class." *Reeb v. Ohio Dept. of Rehab. And Correction*, 435 F.3d 639, 649 (6th Cir. 2006).  As such, where individualized assessments are required, the requisite homogeneity needed to protect the interests of absent class members is lacking. *Id.*

Countrywide argues the classes should not be certified because it did not act on grounds generally applicable to the putative classes and Plaintiffs' requested relief is inappropriate for a 23(b)(2) class. *Id.*  Plaintiffs contend that the instant case is well-suited for 23(b)(2) certification because the putative classes are cohesive and Countrywide acted on grounds generally applicable to the classes thus making Plaintiffs' requested declaratory relief appropriate. *ECF No. 74, 91.*

## A.  REQUESTED RELIEF

### 1.  Declaratory vs. Injunctive Relief

Countrywide first argues that 23(b)(2) certification is improper because Plaintiffs' requested relief is only "declaratory in nature" and will not serve as a later basis for injunctive relief. *ECF No. 82-1* at 29 (citing *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 978 (5th Cir.

2000)).  That is, Plaintiffs' declaratory requested relief does not "correspond" to final injunctive relief and therefore the putative classes do not qualify as 23(b)(2) classes.  *Id.*

In response, Plaintiffs argue that they seek more than declaratory relief.  *ECF No. 91* at 29.  They note that injunctive relief is incorporated in the requested damages for Claim # 2 (violation of Ohio Consumer Sales Practices Act) and, additionally, that Plaintiffs "seek *all* relief the court deems appropriate.  *Id.* (emphasis added).  Furthermore, Plaintiffs claim that even if they sought only declaratory relief, Rule 23(b)(2)'s requirements are satisfied because there is no requirement that both declaratory and injunctive relief be requested.  *Id.*

Rule 23(b)(2) permits class certification where "final injunctive relief *or* corresponding declaratory relief [is appropriate] with respect to the class as a whole."  Fed.R.Civ.P. 23(b)(2) (emphasis added).  Declaratory or injunctive relief must be the predominant relief sought.  *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002).

Countrywide's argument that the putative classes cannot be certified because only declaratory relief is sought is unpersuasive.  The plain text of Rule 23(b)(2) rebuts that argument stating that it applies where "final injunctive *or* corresponding declaratory relief" is appropriately sought for the class as a whole.  Courts within the Sixth Circuit have used a plain language reading of Rule 23(b)(2) to hold that either final injunctive or declaratory relief is appropriate. *See Bacon v. Honda of America Mfg. Inc.*, 241 F.R.D. 466, 484 (S.D.Ohio 2001) (stating "[c]ertification of a 23(b)(2) class turns on whether the injunctive *and/or* declaratory relief sought on behalf of the class predominates relative to any incidental monetary damages requested.") (emphasis added); *Mann v. Acclaim Financial Services, Inc.*, 232 F.R.D. 278

-25-

(S.D.Ohio 2003) (only declaratory relief sought, class certified under 23(b)(2)); *Ingram v. Joe Conway Chevrolet, Inc.*, 90 F.R.D. 129, 133 (E.D.Ky 1981) (stating " [i]n order to bring a proper action under [23(b)(2)], final injunctive *or* declaratory relief must be requested....") (emphasis added).  Therefore, Countrywide's argument fails.

### 2. Putative Class I(b)

Countrywide next argues that, although Plaintiffs seek a declaration that the prepayment charges were illegal, putative Class I(b)'s predominant relief sought is monetary and therefore Rule 23(b)(2) is not applicable. *ECF No. 82-1* at 33-34.  Plaintiffs counter  by arguing that monetary damages do not predominate in this case because the "liability of the defendant can be determined by means of objective standards, can be easily calculated, and are not dependent on intangible, subjective differences that require time consuming efforts by the court on a case by case basis." *ECF No. 91* at 28-9 (citing *Schemmer v. Chartone, Inc.*, Civ. No. 1:05-cv-02923-AA, 2007 WL 1822274  at * 4 (N.D.Ohio June 22, 2007));

Monetary damages, to an extent, are recoverable by 23(b)(2) class.  *See Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002) (noting "the apparent consensus that money damages are recoverable to some extent in a Rule 23(b)(2) class action...").  However, 23(b)(2) certification is improper if the requested monetary damages predominate over the requested declaratory or injunctive relief.  *Reeb v. Ohio Dept. of Rehab. & Correction*, 435 F.3d 639, 651 (6th Cir. 2006). The Sixth Circuit has adopted the Fifth Circuit's test that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive relief...."  *Reeb*, 435 F.3d at 647 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998)).

-26-

A "critical factor" in the predominance of monetary damages is "whether [the] relief requested requires individualized damages determination or is susceptible to calculation on a class-wide basis." *Coleman*, 296 F.3d at 448.  In *Coleman*, the Court denied 23(b)(2) certification, in part, because damages calculation required an individualized inquiry into the amount of interest charged to each class member - an inquiry which would predominate over the requested injunctive or declaratory relief.  *Id.* at 449.  The *Coleman* Court also found it persuasive that the plaintiffs' requested relief was defined in "reference to the markup charged to each individual member of the class."  *Id.*

First, Plaintiffs' request for monetary damages is not incidental to the requested declaratory relief.  "[A]n action seeking a declaration that certain conduct constitutes a breach of conduct would not qualify under Rule 23(b)(2) because the effect simply is to lay the basis for a damage award rather than injunctive relief."  *Daffin v. Ford Motor Co.*, Civ. No. C-1-00-458, 2004 WL 5705647 at * 5 (S.D.Ohio July 15, 2004) (quoting 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1775 (2d ed. 1986)).  It seems clear that Putative Class I(b)'s primary goal is to recover the amount of their allegedly usurious prepayment penalty.  Therefore, the declaratory relief simply lays a basis for Plaintiffs to secure their chief objective of monetary relief.

Furthermore, Plaintiffs' requested monetary damages are subject to precisely the "intangible and subjective differences" between each class member that even Plaintiffs note defeat 23(b)(2) certification.  *Allison*, 151 F.3d at 415.  Because, as discussed in the Rule 23(b)(3) section, the benefits rule applies to the instant case, the trier of fact must perform individualized inquires to determine the benefits (by way of lower interest rates) each class

-27-

member received from their excessive prepayment penalty.  As dictated by *Coleman*, this highly-fact intensive determination weighs heavily against a finding that final declaratory relief predominates.

### 3.  Putative Class II

Putative Class II seeks a declaration that the prepayment provisions contained in their residential mortgages are void and unenforceable.  *ECF No. 70* at  ¶ 43(b).  Additionally, Class II seeks rescission of the allegedly usurious prepayment penalty provisions and reformation of those provisions to contain a 1% prepayment penalty.

Countrywide argues that rescission and reformation cannot be determined class-wide and claims that class certification is often denied when these remedies are sought because they are "highly fact-specific and individualized."  *ECF No. 82-1* at 32.  (quoting *Clark v. State Farm Mutual Automobile Insurance Co.*, 245 F.R.D. 478, 488-89 (D.Colo. 2007)).  Countrywide argues that rescission of a contractual provision requires the parties to be placed in the same position they occupied had the provision never existed thereby requiring the claimant (individual class members) to return the benefits that contractual provision conferred on them.  *Id.* (citing *Mid-America Acceptance Co. v. Lightle*, 579 N.E.2d 721, 727 (Ohio Ct. App. 1989); *Ady v. Miller Day Iseli Energy Co.*, No. 624, 1987 Ohio App. LEXIS 7242 at * 5-6 (Ohio Ct. App. May 28, 1987)).  Determining benefits, Countrywide alleges, cannot be done class-wide and therefore Putative Class II's requested relief defeats the required 23(b)(2) class cohesiveness.  *Id.* at 33.

Plaintiffs argue that reformation is a type of remedy that falls squarely within the scope of 23(b)(2) class certification.  *ECF No. 91* at p. 31.  Plaintiffs state that reformation is inappropriate relief for a class action only where "extensive inquiry into the factual nature of

each class member's contract is necessary to determine the appropriate changes." *Id.*  Plaintiffs, however, dispute that such extensive factual inquiries are required in the instant case and claim that "reformation of the notes to reset the prepayment penalty to 1% would be identical for every Class II member." *Id.*  Plaintiffs claim that all Countrywide would have to do is send a notice with an amended prepayment penalty provision to Class II members informing them that their prepayment penalty is now 1%. *Id.*

"The general rule [under Ohio law] is that a party seeking to rescind a contract or other instrument ... must first place the other *in statu quo*, by returning all money, property, or other benefits received by him under the contract which is sought to be rescinded...." *Passa v. City of Columbus*, Civ. No. 2:03-cv-81, 2008 WL 687168 at * 9 (S.D.Ohio March 11, 2008) (quoting *Miller v. Bieghler,* 123 Ohio. St. 227, 233 (1931)).  *See also Ady*, 1987 Ohio. App. LEXIS 7242 at * 6 (stating "[a] party will not be permitted to retain the benefits of a contract and, at the same time, repudiate it.").

Rescission is a "purely personal remedy" and thus is incompatible with class action suits. *James v. Home Construction Co. of Mobile Inc.*, 621 F.2d 727, 731 (5th Cir. 1980); *McKenna v. First Horizon Home Loan Corp*., 475 F.3d 418, 424-25 (1st Cir. 2007) (stating "[t]he highly individualized character of [the rescission] process and the range of variations that may occur render rescission largely incompatible with a sensible deployment of the class action mechanism.").  "The variations in the transactional 'unwinding' process that may arise from one rescission to the next make it an extremely poor fit for the class-action mechanism." *Andrews v. Chevy Chase Bank,* 545 F.3d 570, 573 (7th Cir. 2008) (quotations in original).  "[T]he equitable nature of rescission generally entitles the affected creditor to judicial consideration of the

-29-

individual circumstances of the particular transaction. Accordingly, a host of individual proceedings would almost certainly follow in the wake of the certification of a class whose loan transactions are referable to rescission." *Id.* (internal citations and quotations omitted).

Thus, rescission and reformation of Class II's contracts with Countrywide to eliminate the allegedly usurious prepayment penalty is incompatible with a class action proceeding. The Court, for example, cannot simply reduce an individual's 3% or 4% prepayment penalty to 1%. Because rescission requires the parties to be placed back in the status quo at the time of contract formation, the Court would have to "unwind the clock" and attempt to determine what interest rate each specific loan originator would have offered each individual class member at the time the mortgage was executed. This is a highly fact-intensive inquiry that diminishes the cohesiveness of Putative Class II beyond that permitted by Rule 23(b)(2). Accordingly, because the relief requested by the putative classes is not appropriate for certification, Plaintiffs' motion to certify under Rule 23(b)(2) is denied.[9]

## IV. MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF CARR

Countrywide has moved for summary judgment as to all claims asserted by Plaintiff Carr. Their argument is essentially that Carr lacks standing to bring a claim for being subject to a mortgage rider with a prepayment penalty provision because Carr cannot obtain any of the relief sought in her complaint. Several undisputed facts are critical to Countrywide's arguments. First, Carr's prepayment penalty rider expired on August 24, 2007. Second, Carr never paid a prepayment penalty. Third, Carr's property was foreclosed upon in 2008 and

---

[9]   The Court need not reach the issue of whether Defendants acted on grounds generally applicable to the class.

ultimately sold in 2009, thus extinguishing the prepayment penalty rider and rendering it incapable of being rescinded and reformed.

For standing, a party must establish: "(1) ... an injury in fact...; (2) the injury is fairly traceable to the conduct of defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  In the context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing.  The plaintiff must allege and/or demonstrate actual present harm or a significant possibility of a future harm."  *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 962 (6th Cir. 2009) (citation and internal quotations omitted).

In her complaint, Carr seeks rescission and reformation of her contract to eliminate the prepayment provision, a declaration that the rider violates R.C. §1343.011(C), and unspecified equitable or injunctive relief.[10]  Given that the prepayment rider has been extinguished, rescission and reformation of a contract provision that no longer exists will not redress any injury suffered.  Similarly, because "[i]n the context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing[, t]he plaintiff must allege and/or demonstrate actual present harm or a significant possibility of a future harm," *Fieger*, 553 F.3d at 962, seeking a declaration that her rider violated R.C. 1343.011(C) is not enough to confer standing.  Carr has not alleged any present harm or any possibility of future harm.  Moreover, Carr cannot establish standing through the argument that Countrywide could

_____

[10]    As discussed *supra*, Carr no longer seeks monetary damages.  *See ECF No. 91* at 33 (stating that no monetary relief is sought by Class II members and that "the only relief requested is for declaratory, injunctive, and equitable relief in the context of the remedy of reformation.")

repeat the alleged misconduct yet evade review.  *ECF No. 80* at 9.  Though Carr may lack

standing and though class certification is not appropriate, there still exist numerous individuals

currently subject to a prepayment penalty, and thus facing an actual present harm or possible

future harm, who can bring an action seeking a declaratory judgment that Countrywide violated

R.C. 1343.011(C).  Accordingly, Defendants' Motion for Summary Judgment is granted.[11]

## V.  MOTION TO STRIKE CLASS ALLEGATIONS AS TO PUTATIVE CLASS I(B)

Defendants have also moved to strike class allegations as to putative Class I(b)

because none of the named Plaintiffs may represent the class.  As discussed *infra*, the Gawry's

cannot represent putative Class I(b) because they have been dismissed from the case and never

were members of that class, and Carr cannot represent putative Class I(b) because she also was

never a member of that class.  *Beattie v. Centurytel, Inc.*, 511 F.3d 554, 563 (6th Cir. 2008).

Putative Class I(b) therefore lacks a representative, and Defendants' Motion to Strike is granted.

## VI.  CONCLUSION

Plaintiffs' Motion for Class Certification (***ECF No. 74***) is hereby **DENIED**,

Defendants' Motion for Summary Judgment as to Ingrid Carr (***ECF No. 76***) is hereby

**GRANTED** and Defendants' Motion to Strike Class Allegations as to Putative Class I(b) (***ECF

No. 75***) is hereby **GRANTED**.  Denial of class certification leaves only individual claims

---

[11]     While the Court rejected the argument that Carr lacks standing in its June 13, 2007 denial
of Countrywide's motion to dismiss (*ECF No. 13*), circumstances have since changed.
Carr's prepayment provision has expired and she no longer seeks monetary damages
pursuant to the allegation that the prepayment penalty injured her credit.  Had Carr been
able to sufficiently allege and/or demonstrate financial damage, she would have standing.
Similarly, since the Court's August 25, 2008 denial of motion for summary judgment
(*ECF No. 49*) which did not address Defendants' standing argument, Carr's property has
been foreclosed upon and sold, extinguishing the prepayment penalty rider.

remaining.  The only individual claims are those of named Plaintiffs Frederic and Lorraine Gawry and Ingrid Carr.  Because the Gawrys' claims were previously dismissed with prejudice (***ECF No. 67***) and Carr's claims have hereby been dismissed, there remain no viable causes of action.  The third amended complaint (***ECF No. 70***) is therefore **DISMISSED** in its entirety and this case is accordingly **DISMISSED WITH PREJUDICE**.

        **IT IS SO ORDERED.**

        ***/s/Dan A. Polster    July 6, 2009***
        **Dan Aaron Polster**
        **United States District Judge**